UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RONDELL JOHNSON,

Defendant.

Case # 22-CR-06188-FPG-MJP-1

DECISION AND ORDER

## INTRODUCTION

On November 29, 2022, a Grand Jury returned an indictment charging Defendant Rondell Johnson with (1) narcotics conspiracy (2) possession of heroin with intent to distribute; (3) possession of fentanyl and ANPP with intent to distribute; (4) possession of cocaine with into to distribute; (5) use of premises to manufacture, distribute, and use a controlled substance; (6) possession of a firearm in furtherance of drug trafficking crimes; and (7) felon in possession of a firearm and ammunition.  ECF No. 57.  In Count 5, the indictment alleges that Defendant Johnson and his codefendant maintained the premises at 277 Wilkins Street in the City of Rochester, New York for the purpose of manufacturing, distributing, and using heroin, fentanyl, and cocaine.  *Id.* at 3.

Defendant filed an omnibus motion seeking, among other things, suppression of statements that he allegedly made to law enforcement officers while in custody.  ECF No. 63.  Magistrate Judge Mark W. Pedersen held oral argument on the motion on March 13, 2023.  ECF No. 69.  On June 14, 2023, Magistrate Judge Pedersen issued a Report and Recommendation ("R&R"), recommending that the District Court grant in part and deny in part Defendant's motion to suppress statements.  ECF No. 78.  The Court granted the government's multiple extension requests, which Defendant did not oppose, and excluded time pursuant to 18 U.S.C. § 3161(h)(7)(A).  *See* ECF

1

Nos. 82, 87, 91, 93, 96.  The government then timely filed its objections to the R&R on October 16, 2023.  ECF No. 98.  Defendant responded on October 30, 2023 and the government filed a reply on November 6, 2023.  ECF Nos. 101, 102.  The R&R is now ripe for review and decision.

For the reasons explained below, the Court adopts in part and rejects in part Magistrate Judge Pedersen's R&R.  Defendant's motion to suppress is granted with respect to Statement One and denied with respect to Statements Two and Three.

## BACKGROUND

On the morning of October 20, 2021, law enforcement officers executed a search warrant at 277 Wilkins Street in the City of Rochester, New York.  ECF No. 63 at 4; ECF No. 66 at 1.  Defendant and codefendant were in the living room at the time.  ECF No. 63 at 4.  In the "primary bedroom," the officers found men's and women's clothing, United States currency, a purse, and a handgun.  ECF No. 66 at 2-3.  Inside a pair of men's denim pants, officers found a black wallet containing an identification card bearing Defendant's name and address.  *Id.*  Outside, the officers discovered a quantity of substances believed to be crack cocaine, powder cocaine, heroin and fentanyl in black plastic bags hidden under the siding of the house.  ECF No. 66 at 2-3; ECF No. 63 ¶ 6.

Before removing Defendant from the residence, the officers asked him about his clothing.  ECF No. 102 at 2; *see also* ECF No. 78 at 4.  Specifically, officers asked "Mr. Johnson, you have shoes, jacket?  Where's everything at.  You can stay put."  ECF No. 102 at 2.  Defendant replied, "Jacket right there," and the officer confirmed, "Jacket right here?"  *Id.*  The officer then asked "What about shoes for you?"  *Id.*  Defendant replied "(inaudible) on the porch."  *Id.*  Before giving Defendant the jacket, officers searched it and found a brown wax paper envelope containing a substance later determined to be fentanyl and ANPP.  ECF No. 66 at 4.

Defendant and codefendant were subsequently removed from 277 Wilkins Street. ECF No. 66 at 5. Neither submitted to a custodial interview. *Id.*

## LEGAL STANDARD

A district court reviews those portions of a Magistrate Judge's report and recommendation to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of a report and recommendation, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009). After reviewing the report and recommendation and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3).

## DISCUSSION

### I. Defendant's Motion and the R&R

Defendant has moved to suppress all statements allegedly made by him on the grounds that they were not preceded by adequate warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1996). ECF No. 63. He argues that he made any statements "after the officers' forced entry into 277 Wilkins Street, when they immediately arrested [Defendant and codefendant], handcuffed them and forced them to sit on the living room couch while they executed a search warrant," and, therefore, "any reasonable person in [his] position would have understood his freedom of action to be curtailed to the degree associated with formal arrest," that is, that Defendant made the statements while in custody. ECF No. 63 at 7. Because, Defendant argues, the government had not presented any evidence to satisfy its burden of demonstrating that he made any statements after a knowing and voluntary waiver of his rights, the statements should be suppressed. *Id.*

In response to Defendant's motion, the government identified three statements it intended to use.  ECF No. 66 at 6.  In "Statement One," which Defendant made at 277 Wilkins Street, he acknowledged that he was "housesitting" when officers asked how much rent he paid per month. *Id.*  In "Statement Two," which Defendant also made at 277 Wilkins Street, he "acknowledged his 'jacket is right there' and that his shoes were 'on the porch' to officers when asked about clothing." *Id.*  These exchanges can be seen on Rochester Police Department Body Worn Camera imagery of Officer Bennetti.  In "Statement Three," which Defendant made at the Public Safety Building ("PSB"), he "asked officers, 'Can I put that on?' while indicating to a jacket on a nearby desk." *Id.*  This exchange can be seen on Rochester Police Department Body Worn Camera imagery of Officer Kent.

The government argues that Statements One and Two were not the product of "interrogation," that is, words or actions on the part of law enforcement officers that they "should have known [were] reasonably likely to elicit an incriminating response."  *Id.* at 7.  The government argues that Statement Three, on the other hand, was "spontaneously made," not the product of custodial interrogation or its functional equivalent, and should not be suppressed for that reason.  *Id.*

On March 13, 2023, Magistrate Judge Pedersen heard oral argument on the omnibus motion, and, two days later, issued a decision on all issues except for Defendant's motion to suppress statements.  *See* ECF No. 70.  At oral argument, Magistrate Judge Pedersen allowed Defendant additional time to review body worn camera footage and inform the Court whether he wished to supplement his pretrial motions.  ECF No. 78 at 2.  On April 12, 2023, Defendant informed Judge Pedersen that he did not wish to supplement his motions after reviewing the videos. *Id.*; *see also* ECF No. 74.

4

Magistrate Judge Pedersen subsequently issued an R&R in which he recommended that this Court grant Defendant's motion to suppress Statements One and Two and deny Defendant's motion to suppress Statement Three.  ECF No. 78 at 7-8.

II.     **Defendant's Statements**

At issue is whether Defendant's statements were the product of custodial interrogation. "Statements made during custodial interrogation are generally inadmissible unless a suspect has first been advised of his rights."  *United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  Interrogation encompasses "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see also United States v. Broughton*, 600 F. App'x 780, 783 (2d Cir. 2015) (summary order).  "The standard for determining the admissibility of statements made by suspects prior to the issuance of a *Miranda* warning is whether the words or actions of the law enforcement agents 'were reasonably likely to elicit an incriminating response.'"  *Gelzer*, 50 F.3d at 1138 (citing *Innis*, 384 U.S. at 302).

Whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response depends upon the totality of the circumstances.  *Broughton*, 600 F. App'x at 783 (quoting *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009)).  "Although an officer's intent is relevant, it is not conclusive; rather, the inquiry 'focuses primarily upon the perceptions of the suspect.'"  *United States v. Davis*, No. 10-CR-6153, 2011 WL 2936123, at *8 (W.D.N.Y. July 18, 2011) (quoting *Innis*, 446 U.S. at 301), *report and recommendation adopted*, 2011 WL 5570707 (W.D.N.Y. Nov. 15, 2011).  The relationship of the question asked to the crime suspected is highly relevant.  *United States v. Casiano*, 862 F. Supp. 52, 54 (S.D.N.Y. 1994) (citing *United States v. Gonzales-Mares*, 752 F.2d 1485, 1489 (9th Cir. 1985)).  Moreover, the mere fact that a

defendant's statement "ultimately provide[s] incriminating information does not in itself render the question interrogative." *Id.* (citing *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986)).

    a. **Statement Two**

Because the government has objected to the R&R with respect to Statement Two, the Court reviews that portion *de novo*. Fed. R. Crim. P. 59(b)(3). The government does not appear to dispute that Defendant was in custody at the time he made Statement Two and that he did not waive his rights prior to making Statement Two. *See* ECF No. 98 at 4-6. The question is therefore whether Statement Two was the product of interrogation. Defendant argues that it was, because he made the statement in response to a question aimed at connecting him to 277 Wilkins Street. *See* ECF No. 101 at 5 (citing ECF No. 78 at 6). The government argues that it was not, as an "officer questioning the defendant about clothing is not of the sort that an officer should reasonably know is likely to elicit an incriminating response." ECF No. 98 at 5. Instead, asking Defendant about "acquiring proper clothing" was "entirely reasonable under the circumstances" because officers needed to properly clothe him before transporting him to the PSB. *Id.* at 6. Accordingly, the government asserts that this Court should deny Defendant's motion to suppress Statement Two. *Id.*

Here, the Court cannot conclude that the officers should have known that asking Defendant about clothes that he could wear to the PSB were reasonably likely to elicit an incriminating response. *Gelzer*, 50 F.3d at 1138 (citing *Innis*, 384 U.S. at 302). While there may be cases in which an officer should know that a question about clothing is reasonably likely to elicit an incriminating response, this is not one of them. In *United States v. Toole*, for example, the court concluded that questions directing the defendant to identify as his personal property a pair of shoes seized from a vehicle were the functional equivalent of interrogation. No. 06-CR-6024L, 2008

6

WL 2323362, at *19 (W.D.N.Y. Jan. 11, 2008), *report and recommendation adopted*, 2008 WL 2354959 (W.D.N.Y. June 3, 2008). There, "a substantial amount of cash was discovered hidden inside shoes located in two bags found in the trunk of [the vehicle]." *Id.* Later, an officer who conducted the initial traffic stop of the vehicle and later participated in a search of the vehicle asked the defendant to identify those items that belonged to him. *Id.* at 18. In particular, the officer asked defendant to claim a pair of shoes hidden within which was a "substantial amount of cash." *Id.* at *19. The court concluded that, by asking the defendant "to identify the shoes as his personal property, the officers elicited statements connecting him to the currency as well." *Id.* So, while those questions "may have been necessary to return [the defendant's] property to him, the officers should have known their questions were likely to elicit incriminating responses." *Id.* In other words, the potentially innocuous nature of the questions, was belied by the circumstances—that is, that the officer knew that the shoes had been seized from a vehicle subject to a police search and contained potentially incriminating evidence in the form of a substantial amount of cash.

By contrast, in *United States v. Casiano*, the court concluded that a defendant was not subject to custodial interrogation when, after executing a search warrant and prior to transporting the defendant, a Bureau of Alcohol, Tobacco and Firearms ("ATF") agent asked the defendant whether a certain coat belonged to him. 862 F. Supp. at 54. Although the suspect in *Casiano* had worn a coat during a drug transaction, and marked cash from that transaction was found in the coat, the court concluded that because (1) there was insufficient evidence to conclude that the ATF agent, based on what he knew that the time, should have known that the coat was connected to the drug transaction and (2) the question was "routine in nature, with the intention solely of preparing the defendant for transport in cold weather." *Id.* at 55. Accordingly, the court further concluded that the agent "could not reasonably be expected to have known that his question was reasonably

7

likely to elicit an incriminating response," and declined to suppress the defendant's statement identifying the coat as his. *Id.*; *see also United States v. Annucci*, No. 06 Cr. 982, 2007 WL 1310156, at *1, 5 (S.D.N.Y. May 3, 2007) (questions about where defendant's "clothing was located, if he had any shoes without laces, and if he was going to need any medication for the next twenty-four hours" were not reasonably likely to elicit an incriminating response).

The same is true here. On this record, there is no basis to conclude that the officers should have known that asking about clothing that Defendant could wear while being transported was reasonably likely to elicit an incriminating response. *See Innis*, 446 U.S. at 300-01; *Casiano*, 862 F. Supp. at 54-55. Defendant does not argue, for example, that law enforcement knew or had reason to know that the jacket was likely to contain incriminating evidence. *See* ECF No. 101 at 2; *cf. Toole*, 2008 WL 2323362, at *19. Unlike in *Toole*, the other items found during the search here—a handgun, a wallet, cash, and drugs—were either found in another room or outside of the residence, not near Defendant's jacket and shoes. *See* 2008 WL 2323362, at *19. And, without more, the mere fact that officers ultimately did recover fentanyl and ANPP from the jacket does not render the questions interrogative. *See Casiano*, 862 F. Supp. at 54 (ATF agent's question about coat, which contained money used in drug transaction, was not interrogative).

The relationship of the questions about Defendant's jacket and shoes to the crimes suspected is too attenuated to render the questions interrogative. *See Casiano*, 862 F. Supp. at 54. This exchange took place in preparation for Defendant's transport to the PSB. *See id.* Moreover, they did not seek information about, for example, the jeans found in the primary bedroom that contained Defendant's identification, or any of the other men's clothing found in that bedroom, where much of the incriminating evidence was found. They therefore differ from the question that prompted Statement One—how much Defendant paid in rent—the response to which would be

reasonably likely to elicit a response regarding Defendant's relationship to 277 Wilkins Street, whether as a tenant, guest, or, as Defendant stated here, a house sitter. The Court is therefore not convinced that the question about Defendant's clothing was "an attempt to tie [Defendant] to the drug house." ECF No. 101 at 5. Instead, the Court is persuaded that, under the circumstances, the questions were routine in nature, aimed at "preparing [Defendant] for transport," and that the officer "could not reasonably be expected to have known that this question was reasonably likely to elicit an incriminating response." *Casiano*, 862 F. Supp. at 55. Statement Two was not, therefore, the product of custodial interrogation. *Innis*, 446 U.S. at 300-01; *Broughton*, 600 F. App'x at 783. Defendant's motion to suppress Statement Two must therefore be denied.

   b. **Statements One and Three**

Because neither party has objected to Magistrate Judge Pedersen's recommendations with respect to Statements One and Three, the Court reviews those portions of the R&R for clear error. *Preston*, 635 F. Supp. 2d at 269. Having done so, the Court agrees with Magistrate Judge Pedersen's reasoning and adopts the R&R with respect to Statements One and Three for the reasons stated therein.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS IN PART and REJECTS IN PART Magistrate Judge Pedersen's R&R, ECF No. 78, and Defendant's motion to suppress, ECF No. 63, is GRANTED IN PART and DENIED IN PART.

The Court adopts, under clear error review, Magistrate Judge Pedersen's conclusion that Defendant was subject to custodial interrogation at 277 Wilkins Street with respect to Statement One, and therefore grants suppression as to Statement One.

The Court rejects Magistrate Judge Pedersen's conclusion that Statement Two was the product of custodial interrogation, and therefore denies suppression as to Statement Two.

The Court adopts, under clear error review, Magistrate Judge Pedersen's conclusion that Statement Three was given freely and voluntarily, and therefore denies suppression as to Statement Three.

IT IS SO ORDERED.

Dated: November 17, 2023
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York